J-S46024-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                               :        PENNSYLVANIA
                               :
         v.                      :
                               :
                               :
STEVEN DANIEL BEST, JR.       :
                               :
         Appellant         :    No. 1574 WDA 2024

Appeal from the Judgment of Sentence Entered December 12, 2024
In the Court of Common Pleas of Westmoreland County Criminal Division
at No(s): CP-65-CR-0000639-2023

BEFORE: BOWES, J., NICHOLS, J., and KING, J.

MEMORANDUM BY NICHOLS, J.:            **FILED: JULY 28, 2026**

Appellant Steven Daniel Best, Jr., appeals from the judgment of sentence imposed after he was convicted of kidnapping and robbery[1] following a jury trial. Appellant claims that the trial court erred by allowing the admission of text messages at trial. We affirm.

The trial court summarized the facts and procedure below as follows:

> [Appellant] was charged with kidnapping, robbery, and simple assault due to an incident that occurred on December 18, 2022, in New Kensington, Westmoreland County.

_____

[1] **See** 18 Pa.C.S. §§ 2901(a)(3) and 3701(a)(1)(v), respectively.

\*     \*     \*

[Prior to trial, Appellant] indicated that he intended to file a motion *in limine* to exclude text messages that were sent after the incident to Angela Gregory [(Victim)]. [Appellant] did not make a specific objection to certain messages but argued generally that all of the messages should be excluded.

Subsequently, [Appellant] provided a motion *in limine* to the court. In that motion, [Appellant] asked [the trial court] to preclude all testimony or evidence involving [the text] messages. . . . He claimed that the messages would be more prejudicial than probative, and they are not relevant to whether he committed the alleged acts. Furthermore, he argued that the messages are not relevant to show consciousness of guilt because they were sent prior to any charges being filed, they would be admitted in violation of the *corpus delicti* rule, and they would confuse the jury. [Appellant] again provided a general objection to all of the messages being admitted and did not argue why any specific messages should be excluded.

[The trial court] reviewed and weighed all the text messages that the Commonwealth intended to introduce and [indicated that some messages appeared admissible while two of the messages did not "seem to have much probative value and lots of prejudicial value." ***See*** N.T., 9/30/24, at 3-6.]

[Appellant] argued that [he] could not be consciously guilty of anything because charges were not yet filed against him. The Commonwealth responded that several messages were sent after charges were filed against [Appellant]. [The trial court] ultimately denied [Appellant's] motion *in limine*.

\*     \*     \*

[Appellant] additionally argued that the messages should not be admissible under the best evidence rule because the Commonwealth did not establish the exact time that the messages were sent, other than the Victim stating approximately when they were sent. ***Id.*** at 79. [The trial court] denied [Appellant's] best evidence rule claim[. ***See id.*** at 180, 186-89.]

Trial Ct. Op., 2/14/25, at 1-5 (some footnotes omitted and some formatting altered).

A jury trial was held from September 30, 2024 to October 2, 2024. **See id.** at 8. During the trial, the Victim testified that she and Appellant had a romantic relationship that commenced in October of 2022. **See** N.T., 10/1/25, at 204-06. On December 17, 2022, the Victim drove to Appellant's residence and stayed overnight with Appellant and then, on the morning of December 18, 2022, when the Victim attempted to leave the residence Appellant physically prevented her from leaving. **See id.** at 213-14, 217. Specifically, the Victim testified that at one point Appellant shut the front door on her arm, causing her pain and trapping her inside the residence; that she sought help from Appellant's roommate but the roommate refused to help her; that Appellant forced the Victim into the basement of his residence; that when the Victim threatened to call the police that Appellant took her phone and withheld it from her for two hours; and that Appellant physically prevented the Victim from leaving his residence for a period of nearly three hours. **See id.** at 214, 218-20, 222, 224-28.

The Victim also testified that, after Appellant finally allowed her to leave his residence on December 18, 2022, Appellant began barraging her with phone calls, text messages, and Facebook messages. **See** Trial Ct. Op., at 2/14/25, at 14; **see also** N.T., 10/1/25, at 234-35. She testified that after she blocked Appellant's number he used a new number to contact her. **See** Trial Ct. Op., at 2/14/25, at 14. Screenshots of the text messages and audio

recordings of the voice messages referenced by the Victim in this testimony, dated December 18, 2022 to January 3, 2023, were entered as evidence by the Commonwealth. *See id.*; *see also* Cmwlth. Exs. 3-12. To establish the authenticity of Appellant's text messages proffered by the Commonwealth as evidence, the Victim testified that she had taken screenshots of the messages from her personal phone and that she had not tampered with or omitted any messages within the feed of messages before providing the screenshots to the police. *See* N.T., 10/1/24, at 97-118, 135-162.

The jury found Appellant guilty of kidnapping and robbery but acquitted Appellant of simple assault. *See* Trial Ct. Op., 2/14/25, at 8. Appellant was sentenced to an aggregate sentence of five to ten years of incarceration followed by twelve months of re-entry supervision. *See id.*

Appellant filed a timely notice of appeal and both Appellant and the trial court complied with Pa.R.A.P. 1925.

On appeal, Appellant raises the following claims:

1. Whether the court committed reversible error in denying Appellant's motion *in limine* and finding that prejudicial text messages were relevant for consciousness of guilt purposes despite their prejudice outweighing their probative value.

2. Whether the court committed reversible error by allowing the text messages to be admitted in a format th[at] violated the best evidence rule.

Appellant's Brief at 7 (some formatting altered).

In support of his prejudice claim, Appellant notes that the trial court admitted "approximately 700 text messages and other interactions" for the

- 4 -

purpose of establishing Appellant's consciousness of guilt. *Id.* at 12. The trial court only excluded two of the proffered messages on the basis that they had more prejudicial than probative value. *Id.* Appellant contends that the Commonwealth only cited to two of the 700 admitted messages as evidence of consciousness of guilt at trial and argues that the "practical use of [the messages] was for an impermissible reason," rather than for consciousness of guilt. *Id.* at 14. Appellant argues that the trial court erred in concluding that "'the volume of the text messages, coupled with their nature and tone[,] were indicative of Appellant's consciousness of guilt.'" *Id.* at 16. Appellant contends that the quantity of messages admitted, that is, the sheer volume of the messages, is what created the prejudice. *Id.* at 17.

In support of his best evidence claim, Appellant argues that the Commonwealth should have offered either the Victim's phone itself or a forensic analysis of the phone, not just screenshots of messages. *See id.* at 18. Appellant contends that the screenshots may have omitted messages and, in that case, would not be accurate reproductions of the original messages. *See id.* Ultimately, Appellant argues that the majority of the messages should have been excluded both because the best evidence was "so readily available" to the Commonwealth and because the large volume of messages "outsize[d] any other evidence presented in the case." *Id.* at 19.

Our Supreme Court has previously stated the following:

> It is well-settled that evidentiary rulings are within the sound discretion of trial courts. Accordingly, [the appellant] carries a heavy burden to demonstrate that the trial court abused its

discretion. An appellant cannot meet this burden by simply persuading an appellate court that it may have reached a different conclusion than that reached by the trial court; rather, to overcome this heavy burden, the appellant must demonstrate that the trial court actually abused its discretionary power.

[T]he term 'discretion' imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion, within the framework of the law, and is not exercised for the purpose of giving effect to the will of the trial judge. Absent an abuse of that discretion, an appellate court should not disturb a trial court's discretionary ruling . . . [A]n abuse of discretion [is not] a mere error of judgment, but rather where the trial court has reached a conclusion which overrides or misapplies the law, or where the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will.

*Commonwealth v. DiStefano*, 265 A.3d 290, 297-98 (Pa. 2021) (citations omitted and some formatting altered).

A trial court "may exclude relevant evidence if its probative value is outweighed by a danger of . . . unfair prejudice." Pa.R.E. 403. 'Unfair prejudice' is "a tendency to suggest decision on an improper basis or to divert the jury's attention away from its duty of weighing the evidence impartially." Pa.R.E. 403 cmt. We note, however, that

all relevant Commonwealth evidence is meant to prejudice a defendant, exclusion is limited to evidence so prejudicial that it would inflame the jury to make a decision based upon something other than the legal propositions relevant to the case. . . . A trial court is not[, however,] required to sanitize the trial to eliminate all unpleasant facts from the jury's consideration where those facts form part of the history and natural development of the events and offenses with which a defendant is charged.

*Commonwealth v. Dula*, 262 A.3d 609, 626-27 (Pa. Super. 2021) (citation omitted and some formatting altered).

- 6 -

Here, the trial court explained that

> consciousness of guilt, like motive, is highly relevant in the determination of guilt . . . [and] any attempt by a defendant to interfere with a witness's testimony is admissible to show a defendant's consciousness of guilt.

* * *

> Here, [Appellant's] messages . . . were sent to the Victim not long after the incident occurred and were littered with numerous admissions and at least arguable confessions from [Appellant]. The admissions were made by [Appellant] early in the conversation and continued throughout the entirety of the messages. It was important for the jury to review the context of the admissions in light of the other messages that were sent.

* * *

> At one point in the messages, the Victim told [Appellant], "You refused to let me leave. You blocked the doors, trapped my arm in one, held me by my legs so I couldn't get up the steps, physically took my phone from me when I said I would call the cops so yes it was that bad. I have freaking nightmares every single night now," [to which Appellant] responded, "I'm so sorry" and did not deny her statement.

* * *

> The messages showed [Appellant's] desperation to get the Victim to talk to him about what occurred following the incident. . . . He [] threaten[ed] . . . to show naked pictures of [the Victim] to her children and others, call her job, call her kids' school, tell the police she made him bleed during the incident, message her family, show up at her house and her job, and call [child welfare services] on her. He also told the Victim he had her address, even though she never gave it to him. These messages were interspersed with [Appellant] apologizing for what he did to the Victim.

* * *

> [Appellant] was relentless in trying to get the Victim to contact him.

* * *

> [T]he text messages demonstrate [Appellant's] attempts to manipulate the Victim to get her to recant or not report the incident, [Appellant's state of mind], and the historical and natural development of the case. This court weighed each of the text messages and excluded some of them that were unduly prejudicial. [Appellant] failed to make any specific objections regarding the messages, despite being instructed to do so.

Trial Ct. Op., 2/14/25, at 16-28 (citations omitted and some formatting altered).

After our review of the record, we conclude that the trial court did not abuse its discretion in admitting the text messages as their probative value outweighed any potential for unfair prejudice. *See DiStefano*, 265 A.3d at 297-98; Pa.R.E. 403. The text messages did not have only a tenuous connection to the events at issue here such that their admission would serve more to inflame the jury than to help the jury determine key questions of fact or "divert the jury's attention away from its duty of weighing the evidence impartially." *See Dula*, 262 A.3d at 626; Pa.R.E. 403 cmt. On the contrary, the messages were compelling evidence of Appellant's consciousness of guilt, corroborated the Victim's testimony, and showed the natural development of the case. The messages were evidence of Appellant's course of conduct towards the Victim and demonstrated remarkable consistency in Appellant's treatment of the Victim, both during the incident that occurred on the morning of December 18, 2022, as testified to by the Victim, and Appellant's treatment of the Victim after this incident.

The text messages also showed Appellant's attempts to prevent the Victim from testifying truthfully about what occurred during the incident. *See*

Cmwlth. Exs. 3-12. Additionally, they contain admissions about what occurred during the incident. *See id.* Further, they illustrate Appellant's attempts to control, intimidate, and threaten the Victim, both physically during the incident itself and, in the aftermath of the incident, remotely with a barrage of threats and cajolery. *See id.*

Accordingly, the trial court was well within its discretion in determining that any prejudice to Appellant – notably arising from his own unsolicited communications to the Victim – was outweighed by the highly probative value of the evidence, particularly as the messages so aptly illustrated Appellant's consciousness of guilt and formed "part of the history and natural development of the events [] with which [Appellant] was charged." *See Dula*, 262 A.3d at 626-27. The trial court also reviewed each message for its prejudicial effect and excluded two messages that it deemed were unduly prejudicial, indicating that it recognized the risk of undue prejudice. *See* Trial Ct. Op., 2/14/25, at 28. For all the foregoing reasons, we find that Appellant's claim of undue prejudice has no merit.

Turning to Appellant's best-evidence claim, we note that the best-evidence rule developed as a common law precept and is codified at Pa.R.E. 1002. *See Commonwealth v. Fisher*, 764 A.2d 82, 87-88 (Pa. Super. 2000). The rule provides that "[a]n original writing, recording, or photograph is required in order to prove its content unless these rules, other rules prescribed by [our] Supreme Court, or a statute provides otherwise." Pa.R.E. 1002. Under the best-evidence rule, the proponent of evidence is required to

provide the original writing, recording, or photograph when such evidence is "integral to proving the central issue in a trial." *Fisher*, 764 A.2d at 88 (citation omitted); *see also* Pa.R.E. 1002 cmt (stating that the rule applies to items that are "operative or dispositive" and concluding that "[i]it is rare that [an item] would be operative or dispositive" where they are "only evidence of [a] transaction, thing[,] or event"). Accordingly, when a proponent introduces a writing, recording, or photograph at trial, Rule 1002 requires that the original be introduced only if the proponent "must prove the contents of the [item] to establish the elements of its case." *Fisher*, 764 A.2d at 88 (citations omitted). When the proffered evidence does not go to the fundamental components of the crimes charged, the Commonwealth is not required to introduce the original of the writing, recording, or photograph. *See id.* at 89. In the same vein, Rule 1004(d) makes clear that the proponent is not required to proffer the original of an item as evidence when the item "is not closely related to a controlling issue." Pa.R.E. 1004(d).

Here, Appellant appeals his convictions for kidnapping and robbery. To establish the elements of these offenses, the Commonwealth presented the Victim's testimony about her romantic relationship with Appellant and, specifically, Appellant's conduct on December 18, 2022. *See* N.T., 10/1/24, at 203-97; N.T., 10/2/24, at 320-96. The Victim testified that she arrived at Appellant's home on December 17, 2022 and spent the night with Appellant and then, the following morning, when she tried to leave, Appellant repeatedly physically prevented her from leaving including, at one point, shutting the

front door on her right arm and holding it there for approximately five minutes, which caused her pain. **See** N.T., 10/1/24, at 214, 219-20. The Victim testified that Appellant "[h]eld [her] with one arm and took [her] phone" without her consent and kept the phone for a period of more than two hours while he kept her against her will in the basement of his home, thereby preventing her from calling for help. **See id.** at 227-28. The Victim testified that Appellant prevented her from leaving his home for almost three hours and that, at one point during this ordeal, she thought she would not make it out of there alive. **See id.** at 228.

The offense of kidnapping is a first-degree felony and is defined, in relevant part, as when a perpetrator "confines another for a substantial period in a place of isolation, with [the] intention[ to] terrorize the victim." 18 Pa.C.S. § 2901(a)(3), (b)(1). The offense of robbery is defined, in relevant part, as when a perpetrator "in the course of committing a theft" commits "any felony of the first or second degree" or "physically takes or removes property from the person of another by force however slight." 18 Pa.C.S. § 3701(1)(iii), (iv).

After our review of the record, we conclude that the trial court did not abuse its discretion or err in overruling Appellant's best-evidence objection to the Commonwealth's proffer of screenshots of Appellant's text messages to the Victim. **See Commonwealth v. Lopez**, 57 A.3d 74, 81 (Pa. Super. 2012); **See Commonwealth v. Talbert**, 129 A.3d 536, 539 (Pa. Super. 2015). Rule 1002 was not applicable to the screenshots of the text messages,

- 11 -

which were proffered by the Commonwealth to establish Appellant's consciousness of guilt of committing the offenses charged, as this evidence was not central to establishing the elements of kidnapping or robbery. *See Fisher*, 764 A.2d at 88-89; *see also* Pa.R.E. 1002 cmt, 1004(d). At trial, the Victim's own testimony established the elements of the charged offenses of kidnapping and robbery sufficient for the jury to find Appellant guilty of these offenses. *See* N.T., 10/1/24, at 214, 219-20, 227-28; *see also* 18 Pa.C.S. §§ 2901(a)(3), (b)(1); 3701(1)(iii), (iv). Even if the text messages had been wholly excluded, the jury had a sufficient evidentiary basis in the form of the Victim's testimony to convict Appellant of kidnapping and robbery. Accordingly, Appellant's best-evidence claim has no merit.

Finding no merit to either of Appellant's claims, we affirm the judgment of sentence.

Judgment of sentence affirmed. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 07/28/2026

- 12 -